UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-518-GWU

WENDALL K. WATSON,                                                PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

**INTRODUCTION**

Wendell Watson brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI).  The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?  If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

08-518  Wendall K. Watson

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

08-518  Wendall K. Watson

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id.</u>  Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

3

08-518  Wendall K. Watson

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

4

08-518  Wendall K. Watson

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

08-518  Wendall K. Watson

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

Watson filed his current applications for DIB and SSI on June 24, 2005.  (Tr. 15).  The claims were denied initially and upon reconsideration and the claimant sought review before an Administrative Law Judge (ALJ).  (Id.).  On March 30, 2007, an ALJ issued a decision denying Social Security benefits to Watson.  (Tr. 15-24). This decision became final for the administration when the Appeals Council found no reason for review on October 23, 2008.  (Tr. 6-8).  The claimant then filed suit

6

08-518  Wendall K. Watson

in federal district court and the case is now before the undersigned on cross-motions for summary judgment.

Watson alleged a disability onset date of October 25, 2000 on his current Social Security applications.  (Tr. 15).  The plaintiff had previously filed applications for DIB and SSI in August of 2001 alleging the same onset date.  (Id.).  These applications were denied initially on November 20, 2001 and no further review was sought by the claimant.  (Id.).  The ALJ did not reopen these earlier applications on the current claim.  (Id.).  Therefore, administrative <u>res judicata</u> precludes reconsideration of this earlier denial decision and the claimant cannot be found disabled prior to this date of November 20, 2001.  (Id.).

The time frame pertinent to Watson's DIB and SSI claims is rather different.  The ALJ determined that his DIB-insured status expired on March 31, 2003.  (Tr. 18).  Thus, the time period relevant to the DIB claim runs from November 21, 2001 to March 31, 2003.  With regard to the SSI claim, the proper inquiry is whether the plaintiff was disabled on or after the application date.  <u>Casey v. Secretary of Health and Human Services</u>, 987 F.2d. 1230, 1233 (6th Cir. 1993).  Therefore, the relevant time period for the SSI claim runs from the June 24, 2005 application filing date through the March 30, 2007 date of the current ALJ's denial decision.

With regard to the DIB claim, the ALJ concluded that Watson, a 47-year-old man with a high school equivalent education, did not suffer from a "severe"

7

impairment during the relevant time period.  (Tr. 18, 22-23).  With regard to the time period pertinent to the SSI claim, the ALJ found that he suffered from impairments related to a major depressive disorder, alcohol abuse/dependence, degenerative disc disease of the thoracic and lumbar spine, and shoulder dyskinesia.  (Tr. 18). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work during this time period.  (Tr. 19, 22).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 23-24).  The ALJ based this decision, in part, upon the testimony of a vocational expert.  (Tr. 23).

With regard to the ALJ's treatment of the evidence relating to the DIB claim, the undersigned finds no error.  The ALJ noted that Watson had submitted no evidence dated from this time period.  (Tr. 18).  The burden was upon the plaintiff to provide evidence complete and detailed enough to enable the Commissioner to determine that he suffered from a "severe impairment."  Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).  The claimant asserts that the ALJ erred by failing to consider whether the evidence from the later time period would "relate back" to the time frame relevant to the DIB claim.  The main evidence cited by Watson in support of the claim concerns a June, 2006 MRI scan of the lumbar spine showing spinal stenosis at L5 with disc desiccation at L5-S1 and

08-518  Wendall K. Watson

mild impingement on the nerve root.  (Tr. 316).  However, a May, 2004 MRI scan of the plaintiff's lumbar spine showed only minimal disc bulges and mild degenerative spinal changes.  (Tr. 157).  Thus, this far more contemporaneous laboratory study showed less impairment than the later study upon which the claimant relies.  A physical examination in July of 2004 revealed muscle strength to be intact.  (Tr. 186).  Therefore, the court finds no error with the ALJ's treatment of this portion of the administrative decision.

The ALJ also dealt properly with the evidence of record relating to Watson's SSI claim.  The hypothetical question presented to Vocational Expert Sally Moore included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to more than frequently push/pull with the right upper extremity; (2) an inability to more than occasionally climb stairs or ramps; (3) an inability to ever climb ladders, ropes or scaffolds; (4) an inability to more than frequently balance, stoop, kneel, crouch, crawl or reach in all directions with right upper extremity; and (5) a need to avoid exposure to full body vibration and the use of vibrating tools with the right upper extremity.  (Tr. 589).  In addition, despite mental problems, the individual would be able to handle detailed instructions, sustain attention and concentration for extended time periods to complete simple work tasks in two-hour segments in an eight-hour day,  and adequately relate and interact with co-workers and supervisors and adapt to routine

9

changes in the work place in such an environment.  (Id.).  In response, Moore identified a significant number of jobs in the national economy which could still be performed, including general office clerk (400,000 national jobs) and non-arms bearing security guard (433,000 national jobs).  (Tr. 530).  The witness later indicated that a sit/stand option in intervals of 30 minutes would not affect the aforementioned job numbers.  (Tr. 591).  Therefore, assuming that the vocational factors considered by Moore fairly characterized Watson's condition during the time period relevant to the SSI claim, then a finding of disabled status is precluded.

With regard to Watson's physical condition, the hypothetical factors were compatible with the physical limitations indicated by Dr. James Ramsey, a non-examining medical reviewer.  Dr. Ramsey opined that the plaintiff could perform medium level work, restricted from a full range by (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally climb ramps or stairs; and (3) a "limited" ability to reach in all directions.  (Tr. 267-274).

In a March, 2007 letter, Dr. Joseph Atallah, a treating pain management specialist at the Veteran's Administration Medical Center, opined that Watson would have "difficulty standing and sitting for long periods of time on a constant basis." (Tr. 293).  The plaintiff asserts that the ALJ erred in failing to adopt this opinion of a treating source.  The ALJ did note a number of reasons why this opinion was rejected including the fact that the plaintiff was currently working part-time, was

08-518  Wendall K. Watson

looking for full-time work, had assumed the care of his elderly, ill mother, and it was contradicted by other evidence in the record.  (Tr. 22).  The court notes that even if the ALJ erred in rejecting the opinion, the somewhat vague sit/stand limitation would appear to be consistent with at least a 30 minute sit/stand option.  As previously noted, the vocational expert indicated such a restriction would not affect the jobs she cited as being available under the hypothetical question.  Therefore, any error in rejecting this opinion is harmless.

Watson argues that the ALJ erred by failing to address the more severe findings on the June, 2006 lumbar MRI scan.  However, no physician of record, including Dr. Atallah, indicated that these problems would preclude all work activity. The more serious back condition indicated on the June, 2006 MRI scan is not necessarily incompatible with performance of at least a restricted range of light level work.  Therefore, the court finds no error.

The court finds no reversible error with the ALJ's handling of the evidence of record relating to Watson's mental status.  Psychologists Jan Jacobson (Tr. 263-264) and Edward Stodola (Tr. 289-290), the non-examining medical reviewers, each opined that the plaintiff would be "moderately" limited in carrying out detailed instructions and responding appropriately to changes in the work setting.  The mental factors of the hypothetical question were essentially consistent with these

11

08-518  Wendall K. Watson

opinions.  The claimant has not raised an issue concerning the evidence relating to his mental status.

Watson argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Watson was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  As previously noted, no physician of record indicated that Watson was totally disabled by his pain complaints and even the sit/stand problems identified by Dr. Atallah would be compatible with the jobs cited by the vocational expert.  While the June, 2006 MRI scan did reveal some impingement of the nerve root contributing to radicular symptoms in the left leg (Tr. 315), the claimant reported in mid-November of 2006 that his recent discectomy had led to a total resolution of his left leg pain, numbness and tingling as well as a 50 percent reduction in his overall pain level (Tr. 386).  Thus, the medical evidence does not

Case: 5:08-cv-00518-GWU   Doc #: 11   Filed: 10/20/09   Page: 13 of 13 - Page ID#: 63

08-518  Wendall K. Watson

appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Watson's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 20th day of October, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

13